UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RONALD D. THURMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | No. 1:12-cv-00516-SEB-MJD |
| CAROLYN W. COLVIN Acting ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

Plaintiff Ronald Thurman requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Social Security Disability Insurance Benefits ("DIB") under Title II and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"). *See* 42 U.S.C. §§ 416(i), 423(d), & 1382c(a)(3). For the reasons set forth below, the Magistrate Judge recommends **AFFIRMING** the decision of the Commissioner.

## I.     Procedural History

Thurman filed an application for DIB and SSI on January 7, 2009, alleging an onset of disability of September 29, 2006. Thurman's applications were denied initially on March 4, 2009 and on reconsideration on April 20, 2009. Thurman requested a hearing, which was held on December 2, 2010 before Administrative Law Judge Kimberly Cramer ("ALJ"). The ALJ denied Thurman's applications on December 21, 2010. The Appeals Council denied Thurman's request

for review on March 16, 2012, making the ALJ's decision the final decision for purposes of judicial review. Thurman filed his Complaint with this Court on April 19, 2012.

## II.     Factual Background and Medical History

Thurman was 39 years old on the alleged onset date of disability. He has a limited education and past relevant work as a janitor. The alleged onset of disability occurred on September 29, 2006, when he was lifting a teacher's desk and had a sudden onset of low back pain. Thurman has lumbar spondylosis, most significant at L4-L5 causing pain and limited range of motion in his lumbar spine.

He was treated at the Methodist Occupational Health Centers, Inc. by Dr. Sprock from October 2006 until January 2007. In Dr. Sprock's final evaluation, he provided for permanent restrictions including standing of less than four hours per day; limited bending, squatting, and twisting; frequent lifting of 10 pounds, occasional lifting of 20 pounds, and push/pull restrictions of 40 pounds. Dr. Sprock also determined that Thurman was not a good surgical candidate and not a good candidate for any further interventional procedures due to Thurman's minimal effort and progress in therapy, significant pain behavior, and self-limiting behavior. Dr. Sprock also cited to significant psychosocial factors and possibly significant symptom magnification as having complicated Thurman's treatment.

Thurman was examined by physicians at the Disability Determination Bureau ("state agency physicians"). Dr. Khan evaluated Thurman in September 2007 and found that Thurman's range of motion at the lumbar spine was significantly restricted. Specifically, Dr. Khan found that Thurman's range of motion in the lumbar spine is only 10 degrees in forward flexion – the normal being 90 degrees. Dr. Khan also indicated that Thurman's motor examination was difficult to examine because of exacerbation of pain on minimal movements.

State agency physician Dr. Lavallo completed a Physical Residual Functional Capacity Assessment in September 2007 whereby he referenced Dr. Khan's restrictions in Thurman's range of motion. Dr. Lavallo opined that Thurman could occasionally lift 10 pounds, frequently lift 10 pounds, could stand and/or walk for at least 2 hours in an 8-hour workday, sit about 6 hours in a workday, and was not limited in his ability to push and/or pull. Dr. Lavallo also opined that Thurman could occasionally perform climbing (ramp/stairs and ladder/rope/scaffolds), balancing, stooping, kneeling, crouching, and crawling. This assessment was reviewed and affirmed by Dr. Dobson.

State agency physician Dr. Corcoran completed a supplemental Physical Residual Functional Capacity Assessment in March 2009. The assessment indicated that great weight was given to the opinion of Dr. Sprock. Dr. Corcoran opined that Thurman could occasionally lift 20 pounds, frequently lift 10 pounds, could stand and/or walk for about 6 hours in an 8-hour workday, sit about 6 hours in a workday, and was not limited in his ability to push and/or pull. Dr. Corcoran also opined that Thurman could occasionally perform climbing (ramp/stairs), stooping, kneeling, crouching, and crawling; however, Dr. Corcoran opined that Thurman could never perform climbing (ladder/rope/scaffolds) and could frequently perform balancing. This assessment was reviewed and affirmed by Dr. Ruiz.

Thurman's physician Dr. Webber also completed a medical source statement in October 2010 indicating that Thurman is limited to standing at one time to 15 minutes, sitting is limited to 15 minutes, can only work one hour per day, can only lift 5 pounds occasionally, no pounds frequently and can never bend or stoop.

### III. <u>Applicable Standard</u>

To be eligible for SSI and DIB, a claimant must have a disability under 42 U.S.C. § 423.[1] Disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity he is not disabled, despite his medical condition and other factors. 20 C.F.R. § 404.1520(b). At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits his ability to perform basic work activities), he is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, he is not disabled. 20 C.F.R. § 404.1520(g).

---

[1] In general, the legal standards applied in the determination of disability are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* This court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). In order to be affirmed, the ALJ must articulate her analysis of the evidence in her decision; while she "is not required to address every piece of evidence or testimony," she must "provide some glimpse into her reasoning . . . [and] build an accurate and logical bridge from the evidence to her conclusion." *Dixon*, 270 F.3d at 1176.

## IV.   The ALJ's Decision

The ALJ first determined that Thurman met the insured status requirements of the Act through December 31, 2011. Applying the five-step analysis, the ALJ found at step one that Thurman had not engaged in substantial gainful activity since the alleged onset date of September 29, 2006. At step two, the ALJ found that Thurman had the following severe impairments: lumbar spondylosis, most significant at L4-L5.

At step three, the ALJ determined that Thurman does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

The ALJ found that Thurman had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except that the Thurman should stand/walk up to two hours in an eight-hour work day, never climb ladders, ropes and scaffolds and only occasionally stoop, kneel, balance, crouch and crawl. The ALJ also included in the RFC that Thurman should avoid working around hazardous machinery, exposure to operation of moving machinery or unprotected heights and slippery work floors. The ALJ further limited Thurman to simple, routine and repetitive tasks.

At step four, the ALJ determined that Thurman was unable to perform any past relevant work. At step five, the ALJ determined that, considering Thurman's age, education, work experience and RFC, there were jobs that existed in the national economy that Thurman could perform. Therefore, the ALJ determined that Thurman was not disabled.

## V. Discussion

The central issue in this matter is whether there is substantial evidence to support the ALJ's decision that Thurman was not disabled. *Dixon*, 270 F.3d at 1176. Thurman raises three arguments on review: 1) the ALJ made a profound legal error regarding the burden of persuasion; 2) substantial evidence does not support the ALJ's finding that Thurman could stoop occasionally; and 3) the ALJ erroneously evaluated examining physician Dr. Strock's January 2007 opinions.

Thurman first argues that the ALJ made a profound legal error by applying the "substantial evidence" appellate standard of review instead of the "preponderance of the evidence" standard as required in 20 C.F.R. § 404.953(a). In support of this argument, Thurman cites to the final sentence of the ALJ's RFC assessment stating "[i]n sum, the above residual functional capacity assessment is supported by the substantial evidence of record." Thurman

does not cite to anywhere else in the record to show that the ALJ failed to apply a preponderance of the evidence standard. The regulations state that "[t]he administrative law judge must base *the decision* on the preponderance of the evidence at the hearing or otherwise included in the record." 20 C.F.R. § 404.953(a). Here, the ALJ merely noted that the RFC assessment was supported by substantial evidence; it does not appear that the ALJ applied the substantial evidence standard to the entire decision and there is no reason to believe that the decision was not based on the preponderance of the evidence. The Court finds that the ALJ did not commit error by noting that the RFC assessment was supported by substantial evidence.

Next, Thurman argues that substantial evidence does not support the ALJ's finding that Thurman could stoop occasionally. Thurman points to Dr. Khan's consultative examination report as support. The report indicates that Thurman's range of motion in the lumbar spine is only 10 degrees in forward flexion – the normal being 90 degrees. [R. at 376.] Thurman also cites to *Golembiewski v. Barnhart*, 322 F.3d 912 (7th Cir. 2003) which required an ALJ to resolve a discrepancy between a claimant with 40 degree forward flexion and a finding that the claimant can occasionally stoop.

SSR 96-9p states that "[a]n ability to stoop occasionally, i.e., from very little up to one-third of the time, is required in most unskilled sedentary occupations. A *complete* inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply . . ." SSR 96-9p, 1996 WL 374185 (July 2, 1996). The burden remains on Thurman to show that he is unable to stoop, thus making him disabled. Dr. Khan's report was evaluated and considered by at least two other state agency physicians. Dr. Lavallo specifically accounted for Dr. Khan's assessment of Thurman's range of motion in an RFC assessment and still found that he could engage in occasional stooping. [R. at 381-82.] It

7

was also concurred with by Dr. Dobson in his review. [R. at 388.] Dr. Corcoran, another state agency physician, completed a supplemental RFC assessment, again finding that Thurman could perform occasional stooping. [R. at 404.] This opinion was concurred with by reviewing physician Dr. Ruiz. [R. at 410.] In sum, four physicians opined that Thurman could perform occasional stooping. Although the ALJ did not rely on the state agency physicians' reports, the ALJ did rely heavily on Dr. Strock's assessment, which was given substantial weight by the state agency physicians. [R. at 407.] Dr. Strock observed clinical inconsistencies between Thurman's proclaimed pain and stooping, even noting that Thurman "lowered himself down to kneeling very slowly, which requires much more strength than quickly dropping down to his knees." [R. at 291.] Dr. Strock opined that Thurman's ability to stoop was self-limiting. [R. at 290.]

The only other evidence that Thurman points to support his inability to stoop was Dr. Webber's medical statement, opining that Thurman could never stoop. The ALJ rejected this opinion stating that it was conclusory. The Court agrees with the ALJ that Dr. Webber's opinion was conclusory as she had not provided any clinical findings or objective medical evidence to support her opinion. Thus, the ALJ properly rejected the opinion. As substantial evidence supports the ALJ's finding that Thurman could occasionally stoop, the ALJ did not need to resolve the discrepancy.

Finally, Thurman argues that the ALJ erroneously evaluated Dr. Strock's January 2007 opinions. Thurman maintains that Dr. Strock limited Thurman to part time work when Dr. Strock "checked boxes for '[l]imited' adjacent to 'sitting' and 'standing' and wrote '4hr/day,' i.e., four hours per day, and '<2hrs,' i.e., less than two hours per day." Brief for Plaintiff at 14, *Thurman v. Colvin*, No. 1:12-cv-00516-SEB-MJD (S.D. Ind. Sept 21, 2012), ECF No. 17. There is no support to Thurman's conclusion that Dr. Strock limited Thurman to part time work. In

considering the report as a whole, Dr. Strock's narrative, which referenced the handwritten notations next to check boxes, clarified that Thurman "should have limited standing of less than four hours per day." [R. at 301.] Indeed, the ALJ's RFC assessment accounted for this and limited Thurman to standing up to two hours. Nowhere in the report does it suggest that Thurman is limited to only working part time. The Court also notes that Dr. Strock's potential notation of less than two hours appears to have been crossed out. Dr. Strock also does not make any reference to sitting. Therefore, Thurman's argument that Dr. Strock limited Thurman to part time work is without merit.

## VI. CONCLUSION

For the reasons set forth above, substantial evidence supports the ALJ's determination that Thurman is not disabled and the Commissioner's decision should be **AFFIRMED**. Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Date:   06/11/2013

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

J. Frank Hanley, II
lauras@jfrankhanley.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov