UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RONALD D. THURMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) No. 1:12-cv-00516-SEB-MJD |
| CAROLYN W. COLVIN Acting | ) |
| Commissioner of the Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

**ORDER OVERRULING PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE
JUDGE'S REPORT AND RECOMMENDATION**

This is an action for judicial review of the final decision of Defendant Commissioner of Social Security ("Commissioner") finding Plaintiff Ronald D. Thurman ("Mr. Thurman") not entitled to Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act. *See* 42 U.S.C. §§ 416(i), 423(d), & 1382c(a)(3). The Administrative Law Judge ("ALJ") found that Mr. Thurman failed to qualify as disabled because he was capable, even with his impairment, of performing other available work in the national and local economy. R. at 21–22. After the Appeals Council denied his request for review on March 16, 2012, the Commissioner's decision became final, and Mr. Thurman timely exercised his right to judicial review under 42 U.S.C. § 405(g). This case was referred for consideration to Magistrate Judge Dinsmore, who on June 11, 2013 issued a Report and Recommendation that the Commissioner's decision be upheld because it was supported by substantial evidence and was otherwise in accord with the law.  This cause is now before the Court on Plaintiff's Objections to the Magistrate Judge's Report and Recommendation.

1

## **Standard of Review**

We review the Commissioner's denial of benefits to determine whether it was supported by substantial evidence or is the result of an error of law. *Rice v. Barnhart,* 384 F.3d 363, 368–369 (7th Cir. 2004); *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). In our review of the ALJ's decision, we will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [our] own judgment for that of the Commissioner." *Lopez,* 336 F.3d at 539. However, the ALJ's decision must be based upon consideration of "all the relevant evidence," without ignoring probative factors. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). In other words, the ALJ must "build an accurate and logical bridge" from the evidence in the record to his or her final conclusion. *Dixon*, 270 F.3d at 1176. We confine the scope of our review to the rationale offered by the ALJ. *See SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Tumminaro v. Astrue,* 671 F.3d 629, 632 (7th Cir. 2011).

When a party raises specific objections to elements of a magistrate judge's report and recommendation, the district court reviews those elements *de novo,* determining for itself whether the Commissioner's decision as to those issues is supported by substantial evidence or was the result of an error of law. Fed. R. Civ. Pro. 72(b). The district court "makes the ultimate decision to adopt, reject, or modify" the report and recommendation, and it need not accept any portion as binding; the court may, however, defer to those conclusions of the report and recommendation to which timely objections have not been raised by a party. *See Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 759–761 (7th Cir. 2009).

**Discussion**

Mr. Thurman raises two objections to the Report and Recommendation. First, he alleges that Magistrate Judge Dinsmore mistakenly rejected his argument that the ALJ committed reversible error by employing the wrong standard of review. *See* Pl.'s Objections 2–4; Rep. 6–7. Second, he contends that the Magistrate's report wrongly accepts the portion of the ALJ's residual functional capacity ("RFC") determination involving Mr. Thurman's ability to "stoop moderately." *See* Pl.'s Objections 4–6; Rep. 7–8.

**I.     The ALJ's standard of review**

According to Mr. Thurman, the ALJ made a "profound legal error" by weighing the evidence according to the improper standard of review. *See* Pl.'s Br. 5. As support for his argument, he points to the last sentence of the ALJ's residual functional capacity ("RFC") assessment, in which she said: "In sum, the above residual functional capacity assessment is supported by the *substantial evidence* of record." R. at 21 (emphasis added). He argues that the ALJ was therefore using the appellate "substantial evidence" standard rather than the "preponderance of the evidence" standard applicable to ALJ fact-finding. Pl.'s Objections 2.

The use of the wrong standard of review might indeed be reversible error, *see, e.g., Spiva v. Astrue,* 628 F.3d 346, 353 (7th Cir. 2010) (discussing the bounds of harmless error), but we decline to accept Mr. Thurman's excessively literal, decontextualized extrapolation from one phrase in the ALJ's decision. The only relevant question, of course, is what standard the ALJ actually applied, not what language she used; the federal regulations provide that "the administrative law judge must base *the decision* on the preponderance of the evidence at the hearing or otherwise included in the record." 20 C.F.R. § 404.953(a) (emphasis added). Here, the ALJ did not invoke either standard, and the casual manner in which she included the phrase

3

"substantial evidence of record"—unaccompanied by any citations to authority—strongly suggests that she employed the words according to their ordinary meaning rather than as a term of art. *See* R. at 21. Nowhere else in the decision did she signal that she was applying a deferential standard of review, and the hearing transcript confirms that she was fully aware of her proper role in weighing the evidence. At the opening of the hearing, the ALJ explained as follows to Mr. Thurman and counsel: "I want you to know that I'm not bound by the prior decision of the Agency. Instead, I will now independently consider all the medical evidence of record…and the hearing testimony presented today." R. at 32. Given the entirely proper tenor of her decision, considered as a whole, and her demonstrated understanding of the correct standard of review, it would be wholly unreasonable to conclude that the ALJ made a gross legal error based only on her admittedly careless choice of words in one sentence. We decline to do so.

## II.     The ALJ's conclusions as to Mr. Thurman's ability to stoop

In her residual functional capacity findings, the ALJ determined that Mr. Thurman could perform "light work," with the additional limitations that he "should stand/walk up to 2 hours in an 8-hour work day, never climb ladders, ropes, and scaffolds and only occasionally stoop, kneel, balance, crouch, and crawl." R. at 18. According to Mr. Thurman, an examination by agency physician, Dr. Mubashir Khan, precludes this finding with respect to stooping, because Dr. Khan noted that Mr. Thurman's spinal range of motion was only 10 degrees. R. at 376. Because the range-of-motion report is "objective medical evidence," Mr. Thurman argues that the ALJ erred in failing to account for it in her opinion. As support for this argument, he points to the Seventh Circuit decision in *Golembiewski v. Barnhart,* 322 F.3d 912 (7th Cir. 2003), which held that an ALJ has a responsibility to reconcile conflicting reports of a claimant's range

4

of motion, and could not simply ignore an objective finding in reaching its decision. 322 F.3d at 917.

It is true that an ALJ may not "ignore an entire line of evidence that is contrary to the ruling." *Zurawski v. Halter,* 245 F.3d 881, 888 (7th Cir. 2001). Where there are significant pieces of objective evidence that are in conflict with one another, the ALJ must resolve that conflict if the reviewing court is to be confident that the decision was based on "all the relevant evidence." *See Scott v. Barnhart,* 297 F.3d 589, 596 (7th Cir. 2002); *Herron,* 19 F.3d at 333. However, Mr. Thurman's citation of *Golembiewski* is inapt. In that case, the record contained two conflicting reports: one doctor reporting that the claimant could "stoop occasionally," and another doctor finding that the claimant's lower back range of motion was only 40 degrees, precluding him from stooping on the job. *Golembiewski,* 322 F.3d at 917. The ALJ there accounted for neither report, and his residual functional capacity determination did not mention the issue of a stooping deficiency at all. *Id.* at 915. Here, by contrast, the ALJ did address Dr. Khan's report—noting the "exacerbation of pain on minimal movements"—but grounded her conclusion on Mr. Thurman's functional limitations in a balance between objective medical evidence and a detailed account of Mr. Thurman's problems with credibility. *See* R. at 18–21.

The ALJ correctly noted that there are two steps to conducting a residual functional capacity evaluation: first, determining the presence of any "underlying medically determinable physical or mental impairments"; second, weighing the "intensity, persistence, and limiting effects" of the claimant's symptoms to discover the extent to which they limit the claimant's functioning. R. at 18; 20 C.F.R. § 404.1529(a). Social Security Ruling 96-7p provides some guidance to an ALJ when evaluating the credibility of a claimant's self-reported symptoms. In assessing credibility, ALJs are to look to the entire case record, including "objective medical

5

evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual." S.S.R. 96-7p, 1996 WL 374186, ¶ 4 (1996). Since some types of pain suggest a greater severity of impairment than can be shown by objective evidence alone, ALJs should never reject a claimant's statement about his symptoms *solely* because it is not corroborated by objective evidence. *Id.* at ¶¶ 3–4; *see also Parker v. Astrue,* 597 F.3d 920, 921 (7th Cir. 2010) (holding that ALJs cannot conclude "there is no objective medical confirmation of the claimant's pain; therefore the claimant is not in pain."). Rather, reported symptoms must be weighed carefully against the rest of the relevant evidence, and the ALJ must give "specific reasons" for his or her findings on the issue of credibility. *Id.* at ¶ 5.

 As to objective evidence of physical impairments, the ALJ noted in Mr. Thurman's case that a 2010 lumbar x-ray showing mild degeneration is consistent with some level of pain and functional limitation. R. at 19; Exhibit 12F, R. at 4–7. She found, however, that other record evidence of Mr. Thurman's pain and physical limitations must be partially discounted because his "self-limiting behavior" undermines his credibility in testifying as to his symptoms. R. at 19. In support of this conclusion, the ALJ discussed the reports of several treating physicians. Dr. Gregory Strock opined that Mr. Thurman's self-reporting suffered from "marked inconsistencies" and noted the possibility of "symptom magnification." R. at 19; Exhibit 1F at 14. Dr. Paul Glass's report showed apparent inconsistency between Mr. Thurman's account of his inability to crouch and walk on his toes and an objective neurological examination that showed that he retained full motor strength, with no muscle atrophying or weakness. R. at 20; Exhibit 6F at 4. A report from a 2007 "physical work performance evaluation" at Methodist

Occupational Health shows that Mr. Thurman "self-limited" on a majority of the 31 assigned physical tasks, including stooping. R. at 290, 295.

The ALJ included Dr. Khan's report in her discussion of Mr. Thurman's limited credibility, noting the contrast between his range-of-motion performance and a sensory examination whose results displayed "normal muscle tone, bulk, power, and reflexes." R. at 20. She also decided to discount the opinion of treating physician Dr. Denise Webber, whose report diverged from other medical opinion in diagnosing Mr. Thurman's level of functional impairment. R. at 20–21; Exhibit 13F (Finding he "should not stand or sit for more than 15 minutes, can only work an hour per day…should never bend or stoop."). The ALJ found that Dr. Webber's opinions were "conclusory," and rejected them as inconsistent not only with the rest of the record, but with Dr. Webber's own conservative course of treatment. R. at 21.

Mr. Thurman may be correct in asserting that a patient's *actual* range of motion may be "objective medical evidence," but the Commissioner rightly retorts that Mr. Thurman has presented "no authority to support his implied proposition that a claimant cannot exaggerate his limited range of motion." Defs.' Resp. 2. In his Objections, Mr. Thurman reminds us that no other medical evidence directly "rebuts" Dr. Khan's report as to stooping. Pl.'s Objections 6. While this may be true, it misrepresents the nature of the ALJ's role in making a residual functional capacity determination. No single piece medical opinion is accorded a rebuttable presumption of truth, to be discounted only when directly negated by other reports. *See Austin v. Barnhart,* 83 Fed. Appx. 812, 815–816, (7th Cir. 2003); *see also* 20 C.F.R. 404.1527. This is true even of *treating* physician opinions—like Dr. Webber's but unlike Dr. Khan's—which are given controlling weight only when "well supported by medical evidence and not inconsistent with other substantial evidence." *Clifford v. Apfel,* 227 F.3d 863, 870 (7th Cir. 2000). Rather, the ALJ

weighs the entirety of the evidence—including reports like Dr. Khan's and Dr. Webber's—in deciding whether the picture the claimant presents is credible and potentially consistent with objective data. The ALJ here has supported her conclusions as to Dr. Khan and Dr. Webber's reports with references to inconsistencies both internal and external—their conclusions about stooping are at odds with their own objective measurements, and this inconsistency meshes with the pattern of self-limiting behavior reflected elsewhere in the medical record. *See* R. at 19–21.

Treating isolated physicians' reports in this way—as long as the ALJ provides support for her reasoning—is a valid exercise of fact-finding discretion. *See Austin*, 83 Fed. Appx. at 815 (affirming an ALJ's decision to reject a physician's opinion on stooping when it "conflicted with the medical evidence" and findings of other doctors). The ALJ may have neglected to mention specifically Dr. Khan's report of 10 degree flexion, but she gave ample reasons for her finding that such purported limitations cannot be fully credited because of Mr. Thurman's reduced credibility. Her analysis is thus a far cry from the one-sentence, conclusory credibility findings with which reviewing courts have taken issue in the past. *Cf. Zurawski,* 245 F.3d at 887 (finding to be inadequate such bare, unsupported statements as "the allegations are not credible") (citing S.S.R. 96-7p); *Golembiewski*, 322 F.3d at 917 (reversing a credibility finding where the ALJ gave no reasons or concrete evidence for disbelieving claimant testimony). Mr. Thurman's reliance on *Golembiewski,* or other cases where ALJs have egregiously failed to consider the relevant evidence or provide any guidance for courts reviewing their decision-making, is unavailing here.

## Conclusion

We find that neither of Mr. Thurman's objections to the Magistrate Judge's Report and Recommendation has merit. There is no reason to conclude that the ALJ applied an incorrect

standard of review, and the ALJ's conclusions with respect to Mr. Thurman's stooping limitation were supported by substantial evidence and free from legal error. Accordingly, the Plaintiff's objections to the Magistrate Judge's well-reasoned Report are OVERRULED and we ADOPT the recommendations set forth in the Magistrate Judge's Report and Recommendation.

    IT IS SO ORDERED.

Date: __08/29/2013_____

*Sarah Evans Barker*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

J. Frank Hanley, II
lauras@jfrankhanley.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov